836 So.2d 1214 (2003)
Deborah LEE, Plaintiff-Appellee,
v.
Christus SCHUMPERT, Defendant-Appellant.
No. 36,733-WCA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
*1216 Mayer, Smith & Roberts by John C. Turnage, Shreveport, Kelly J. Workman, for Defendant-Appellant.
Alex S. Lyons, for Plaintiff-Appellee.
Before WILLIAMS, CARAWAY and HARRISON (Pro Tempore), JJ.
HARRISON, Judge Pro Tempore.
Both the claimant and the employer appeal various aspects of a judgment that awarded the claimant supplemental earnings benefits but denied other benefits allegedly arising from occupational diseases. For the reasons expressed, we affirm.

Factual and procedural background
The claimant, Deborah Lee, went to work for Shumpert Medical Center (now known as Christus Schumpert, but referred to herein as "Schumpert") in late 1986; in 1994 she was transferred to health information management. She described her position as an "abstractor": pulling outpatient charts, gathering lab and other clinical reports, entering them on the charts by hand, and then keypunching the data for a final printout. She testified that she had a daily quota of 20 (later she said 24) charts to complete.
In about March 1999, she began having pain in her right elbow. In May 1999 her family doctor, Dr. Sreedevi Yarrapraggada ("Dr.Sree") referred her to an orthopedic surgeon, Dr. Ryan Bicknell. According to Dr. Bicknell, Ms. Lee complained that work activities made her elbow hurt, and in his report he related her pain to her employment. Conservative treatment (use of a splint and anti-inflammatory drugs) yielded only marginal results. He found evidence of lateral epicondylitis and carpal tunnel syndrome ("CTS") in the right arm; however, a nerve conduction study showed positive for radial nerve entrapment. In deposition, Dr. Bicknell was "certain" that he discussed with her that her problems were work-related, but he gave her nothing in writing to this effect. Dr. Bicknell performed surgery to release the radial *1217 nerve on August 30, 1999. He found that the operation cleared up her symptoms, but told her to stay home for about five weeks. He then authorized her to return to work with no repetitive activity, prolonged writing or heavy lifting with the right hand.
Ms. Lee worked until the day before this operation, which she claimed on her group health insurance, provided by Am Care at Schumpert. Pursuant to Dr. Bicknell's release, she reported back to work on October 11. However, Human Resources advised her that her job was being terminated. She received a 16-week severance pay package, and then applied for and received unemployment compensation for the maximum period, six months.
In the meantime, however, Ms. Lee continued having pain which she described as radiating down from her shoulder and making her fingers tingle. In late December 1999, she was involved in a rear-end auto accident that gave her severe whiplash and back pain; she said it also aggravated her elbow. In January 2000, she returned to Dr. Bicknell, who noted that she "continued to have" evidence of lateral epicondylitis in the right elbow and mild CTS. In deposition, Dr. Bicknell said he advised her that all her problemsepicondylitis, radial tunnel entrapment and CTSwere related to work duties.
Ms. Lee retained an attorney, Alex Lyons, for her auto accident claim. Feeling that she might have a compensation claim, he asked Dr. Bicknell for a written opinion. By letter of February 29, 2000, Dr. Bicknell replied that all the problems in Ms. Lee's right arm were related to her employment. She contended at trial and on appeal that this was the first time she knew that her injuries were work-related. She filed the instant disputed claim on May 31, 2000.
By this time, Ms. Lee had grown dissatisfied with her lack of progress with Dr. Bicknell. Without consulting Schumpert, she asked her primary care physician, Dr. Sree, to refer her to Dr. John Knight, another orthopedic surgeon. In May and June 2000, he diagnosed medial neuropathy and probable radial tunnel syndrome, all related to her work. He performed surgery to correct these on June 12, 2000.
Ms. Lee's unemployment benefits ended in late August 2000. She was still under restrictions against heavy lifting and excessive writing. She got two temporary jobs in medical records for local doctors, but testified that pulling and writing on charts made her elbow really hurt, about a "5." She also worked a few part-time jobs in retail at Mall St. Vincent.
As noted, Ms. Lee filed this disputed claim on May 31, 2000. She sought temporary total disability benefits, supplemental earnings benefits, reimbursement for Dr. Bicknell's surgery, authorization for Dr. Knight's surgery, plus penalties and attorney fees. Schumpert filed an exception of prescription, urging that the action was filed more than six months after the occupational disease manifested itself. La. R.S. 23:1031.1 E.
A hearing on the exception was held in June 2001. After receiving evidence, the WCJ ruled orally that all three of Ms. Lee's conditions manifested "as early as May 1999," but she received no written confirmation that they were work-related until Dr. Bicknell's letter of February 29, 2000. Nevertheless, the WCJ found that just prior to the first surgery in August 1999, Dr. Bicknell advised her that the radial nerve entrapment was work-related, so her action for that occupational injury was prescribed. By contrast, nobody advised her that the other two conditions, epicondylitis and CTS, were work-related until February 2000, so her claim for those *1218 injuries was timely. The WCJ rendered a judgment sustaining the exception in part and denying it in part.[1]
The matter went to trial on the merits in November 2001. The parties stipulated that Ms. Lee's average weekly wage was $450, and that the cost of Dr. Knight's operation (covered by Am Care with Ms. Lee's co-payments) was $9,155.58. The deposition of Dr. Bicknell and various medical records were offered. The only live witness was Ms. Lee, who described her medical history and sequence of temporary jobs.
Without giving reasons, the WCJ rendered judgment:
(1) Finding that Ms. Lee's CTS and epicondylitis were work-related.
(2) Awarding her certain outstanding medical expenses.
(3) Denying her claim for temporary, total disability benefits.
(4) Awarding supplemental earnings benefits starting September 1, 2000, subject to specified credits.
(5) Denying the claim for medical expenses paid by Am Care.
(6) Finding that Ms. Lee changed her treating orthopedic surgeon without Schumpert's approval, and thus denying her claim to recover the cost of Dr. Knight's operation.
(7) Denying the claim for penalties and attorney fees.
(8) Casting Schumpert with costs.
Schumpert appealed, raising three assignments of error. Ms. Lee answered the appeal, raising two.

Discussion: Prescription
By their first assignments, both sides contest the WCJ's ruling on the exception of prescription. Schumpert urges that Ms. Lee filed this claim more than six months after she learned that her CTS and epicondylitis were work-related. In support, Schumpert urges that Dr. Bicknell diagnosed all three conditions in May 1999; he told her (according to his deposition) that the most logical explanation for her problems was repetitive motion activity, like her work duties, and she may have to consider career changes. Schumpert argues that on this evidence, the WCJ should have found that Ms. Lee knew her conditions were work-related by mid-1999; therefore, her claim, filed May 31, 2000, was untimely.
Ms. Lee urges that her claim for radial nerve entrapment was timely. She first argues that the general prescriptive period of one year for compensation claims, R.S. 23:1209, should apply to her claim, rather than the specific prescriptive period of six months for occupational disease claims, R.S. 23:1031.1 E. Even if the six-month period applies, she urges that Schumpert had constructive notice that her radial nerve injury was work-related. In support she cites LaCour v. Hilti Corp., 98-2691 (La.5/18/99), 733 So.2d 1193; Riley v. Avondale Shipyards, 305 So.2d 742 (La. App. 4 Cir.1975); and Winzor v. Augenstein Const. Co., 378 So.2d 470 (La.App.6 3 Cir.1979), writ denied, 379 So.2d 1103 (La. 1980).
The prescriptive period for occupational disease claims is regulated by La. R.S. 23:1031.1 E. At the time that Ms. Lee's claim arose,[2] this subsection provided:

*1219 All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related. * * *
All three elements must be satisfied before prescription begins to run on an occupational disease claim. Bynum v. Capital City Press, 95-1395 (La.7/2/96), 676 So.2d 582; Mire v. Ranger Plant Const. Co., 01-2247 (La.App. 1 Cir. 9/27/02), 835 So.2d 550.
Schumpert correctly shows that Dr. Bicknell suspected, as early as May 1999, that Ms. Lee's epicondylitis and right CTS were work-related. He thought he advised her of this assessment at the time, but he could not document it until his letter of February 29, 2000, and Ms. Lee insisted she did not know it until Mr. Lyons got Dr. Bicknell's letter. In short, the record evidence as to element (c) is unclear.
By contrast, the record is completely clear that the epicondylitis and right CTS did not disable Ms. Lee from working until Dr. Knight operated in June 2000. Until that time, element (b) was not present. Ms. Lee's claim for benefits arising from these two conditions, filed in May 2000, was therefore timely. The WCJ did not err in denying this portion of the exception of prescription. Schumpert's first assignment of error lacks merit.
The amendment extending the prescriptive period for occupational disease claims did not take effect until after Ms. Lee's claim arose. In general, the governing law in a compensation action is that which was in effect at the time of the injury. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992). Amendments to the prescriptive period are not retroactive. Gay v. C & D of Shreveport, 25,319 (La. App. 2 Cir. 10/26/94), 645 So.2d 280, and citations therein. Prior to amendment, R.S. 23:1031.1 E required the claimant to "file a claim with his employer" within six months after the three elements are satisfied. LaCour v. Hilti Corp., supra. The general prescriptive period of one year, R.S. 23:1209 A, applied only if the claimant notified her employer within the six-month period of 23:1031.1 E. Id. The sufficiency of the notice depended on the facts of the case. In LaCour, for example, the claimant sought and received short-term disability benefits several times after elbow surgery; his surgeon advised the disability insurer by letter that the employment had caused the elbow degeneration. In Riley v. Avondale Shipyards, supra, the claimant immediately sought disability retirement from his employer; the employer paid it. The courts found that both claimants gave sufficient notice within the applicable prescriptive period to place the employers on constructive notice of a compensation claim. In the instant case, there is no evidence that Dr. Bicknell ever told Schumpert the radial nerve compression was work-related, or that Ms. Lee ever told them until over six month after the operation. The record does not show that she applied for disability benefits. On this record, the WCJ was not clearly wrong to find no constructive notice of Ms. Lee's compensation claim within the six-month period. Ms. Lee's first assignment of error lacks merit.

Supplemental earnings benefits
By its second assignment, Schumpert urges the WCJ erred in finding that Ms. Lee was unable to earn 90% of her pre-injury wage, when in fact she is physically able to work as a sales associate. It cites *1220 her part-time jobs at Victoria's Secret (20 hours a week at $5.50 an hour) and Kay Jewelers (21 hours a week at $8.00 an hour) as proof of her ability to earn 90% of her pre-injury wage.
A claimant is entitled to receive supplemental earnings benefits if she sustains a work-related injury that results in her inability to earn 90% or more of her average pre-injury wage. La. R.S. 23:1221(3)(a). The claimant bears the initial burden of proving, by a preponderance of the evidence, that the injury resulted in the inability to earn that amount, under the facts and circumstances of the case. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. If the claimant meets this burden, the burden shifts to the employer to prove that the claimant is physically able to perform a certain job and that the job was offered to the claimant, or that the job was available to her within her or the employer's geographic region. R.S. 23:1221(3)(c)(i); Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551. If the employer satisfied that burden, then the claimant must show, by clear and convincing evidence unaided by any presumption of disability, that she is unable to perform the employment offered or available, solely as a result of substantial pain. R.S. 23:1221(3)(c)(ii); Payne v. Lawn Lourd Lawn Service, 35,491 (La.App. 2 Cir. 12/5/01), 803 So.2d 321. The WCJ's factual findings cannot be reversed unless they are plainly wrong. Freeman v. Poulan/Weed Eater, supra.
Ms. Lee testified that since the second operation, she has been under restrictions against excessive writing and heavy lifting, and her attempts to resume work in medical records have resulted in substantial pain. This uncontradicted testimony satisfied her initial burden under R.S. 23:1221(3)(a). She also testified that as a result of this, she has worked in retail stores. However, her highest-paying retail job, at Kay Jewelers, paid only $8.00 an hour; if available full-time, this would still pay only $320 a week, which is less than 90% of her pre-injury wage of $450. Schumpert offered no evidence of retail or any other kind of work within Ms. Lee's restrictions that would meet the 90% criterion. This evidence does not satisfy the employer's burden under R.S. 23:1221(3)(c)(i).
On this record, the WCJ was not plainly wrong to award supplemental earnings benefits. This assignment lacks merit.

Proof of occupational disease
By its third assignment, Schumpert urges that Ms. Lee failed to prove that her condition resulted from "causes and conditions characteristic of and peculiar to the particular trade, occupation, process or employment" as required by R.S. 23:1031.1 B. In support, it cites a passage from Dr. Bicknell's deposition in which he stated it was "possible to be related to an overuse type phenomenon at work."
Occupational disease is defined by R.S. 23:1031.1 B:
An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.
The claimant asserting an occupational disease must prove, by a preponderance of evidence, a disability related to an employment-related disease, that it was contracted during the course of employment, and that it is the result of the work performed. Hymes v. Monroe Mack Sales, 28,768 (La.App. 2 Cir. 10/30/96), 682 So.2d 871; Price v. City of New Orleans, 95-1851 (La.App. 4 Cir. 3/27/96), 672 So.2d 1045, writ denied, 96-1016 (La.10/25/96), *1221 681 So.2d 360. The causal link between the claimant's occupational disease and the work-related duties must be established by reasonable probability. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161; Hymes v. Monroe Mack Sales, supra. The claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused it. Hymes v. Monroe Mack Sales, supra. Expert testimony is required to support a finding of an occupational disease. Id., and citations therein.
In the recent case of Fite v. Louisiana Title Co., 36,393 (La.App. 2 Cir. 9/18/02), 828 So.2d 165, the claimant was a title abstractor who described her work as writing a lot, carrying a heavy briefcase, lifting heavy books and typing on a computer. She developed lateral epicondylitis and CTS in her right hand, and claimed that these were occupational diseases resulting from her employment. The WCJ agreed, awarding medical expenses and supplemental earnings benefits. On appeal, however, this court reversed, noting the lack of evidence that the claimant was exposed to hazards peculiar to abstractors, and the lack of expert medical opinion that her job duties caused the CTS and epicondylitis.
Unlike the claimant in Fite, Ms. Lee offered the expert testimony of Dr. Bicknell who repeatedly stated that her conditions were more probably than not related to her employment. Despite his occasional use of the word "possibility," he agreed that her conditions were "due to causes and conditions characteristic of her employment." Bicknell's Dep., 21. On this evidence, the WCJ was entitled to find that Ms. Lee satisfied the criteria for proving an occupational disease. Because of the quality of the evidence, this case is distinguished from Fite. This assignment lacks merit.

Penalties and attorney fees
By her second assignment, Ms. Lee urges the WCJ should have awarded penalties and attorney fees. She contends that after this court denied the writ application, Schumpert could not reasonably controvert her claim for CTS and epicondylitis. R.S. 23:1201 F. Schumpert responds that its conduct was reasonable, its position with respect to prescription was well-founded, and the WCJ did not abuse its discretion.
Failure to provide payment in accordance with the workers' compensation act shall result in the assessment of a penalty and reasonable attorney fee; however, these are not assessed if the claim is reasonably controverted or the failure to pay results from conditions over which the employer had no control. La. R.S. 23:1201 F. A claim is reasonably controverted when the employer produces factual or medical information of such a nature that it reasonably counters the claimant's evidence. Balsamo v. Jones, 28,885 (La. App. 2 Cir. 12/11/96), 685 So.2d 1140. Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. Brown v. Texas-LA Cartage, 98-1063 (La.12/1/98), 721 So.2d 885; Nowlin v. Breck Const. Co., 30,622 (La.App. 2 Cir. 6/24/98), 715 So.2d 112. Statutes authorizing penalties and attorney fees are not intended to compensate the claimant and thereby make her whole, but rather to discourage certain behaviors such as indifference to an injured employee. Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382.
Ms. Lee's only argument is that after the WCJ ruled that her claim for CTS and epicondylitis were timely, and this court denied Schumpert's writ application, Schumpert had no factual basis to *1222 refuse paying medical expenses and indemnity benefits. However, Ms. Lee drew unemployment benefits for six months in 2000; since then, she has worked at various part-time jobs, about which the WCJ questioned her closely. On this evidence, the WCJ was entitled to find that her claim of disability was reasonably controverted. Moreover, Ms. Lee showed great improvement after Dr. Bicknell operated in August 1999; he testified that her auto accident in December 2000 may have made the condition more symptomatic. By identifying another possible cause for the second surgery, Schumpert reasonably controverted the claim. This assignment lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs of appeal are assessed 50% to Schumpert and 50% to Ms. Lee.
AFFIRMED.
NOTES
[1] Schumpert applied for a writ; this court denied it on the showing made, October 19, 2001.
[2] The section was amended by 2001 La. Acts No. 1189, § 1, effective August 15, 2001. Under the amendment, the claimant must "file a claim as provided in this Chapter within one year from the date" that the three elements arise.