954 So.2d 818 (2007)
Essie V. JACKSON, Plaintiff-Appellant
v.
RED RIVER PARISH SCHOOL BOARD, Defendant-Appellee.
No. 42,080-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2007.
*819 Essie Viola Jackson Pro Se.
Johnson, Stiltner & Rahman, by Thomas D. Travis, Baton Rouge, for Appellee.
Before CARAWAY, LOLLEY and SEXTON (Pro Tempore), JJ.
LOLLEY, J.
Claimant, Essie V. Jackson, appeals a judgment rendered by the Office of Workers' Compensation, Parish of Caddo, State of Louisiana, which granted an involuntary dismissal in favor of her employer, Red River Parish School Board. For the following reasons, we affirm.

FACTS
For almost ten years beginning in August 1994, Jackson was employed as a school bus driver for the Red River Parish School Board ("RRPSB"). In addition, from September 2000 through May 2002, Jackson worked at the Ware Youth Center during the day.[1] On May 10, 2005, Jackson reported to the RRPSB that she suffered from various physical ailments that she attributed to her work as a bus driver. On May 25, 2005, appearing pro se, Jackson filed a disputed claim for compensation alleging that she had been injured "from [her] head to [her] legs" while employed with RRPSB; she gave the date of her illness as May 10, 2005. For the date, time and place of the accident, she stated:
Over a period of time longer than one week or shift. It resulted from systemic and repeated exposure to aggravated stress & few strains.
In describing the accident and injury in detail, Jackson said:
Occupational disease claim medical conditions was (sic) manifested in the course and scope of my employment, of repeated stress, aggravation and strain; and continuing conditions until no longer able to work.
*820 She claimed that she was totally disabled from working as a result of her ailments. Also in the record is another form entitled "Employee Medical Treatment Questionnaire" that was completed on May 10, 2005, by Dr. Wayne Barksdale. The doctor listed Jackson's most current diagnosis as:
Coronary artery disease, hypertension, diabetes, depression, sleep apnea, hypercholesterolemia, pulmonary fibrosis, bilateral leg pain, reflux, diastolic heart failure.
Dr. Barksdale indicated that he had prescribed a variety of medications for Jackson since October 11, 2002, and further indicated that he expected Jackson to take these medications for the duration of her lifetime. In particular, Dr. Barksdale noted that Jackson's prednisone medication was responsible for muscle weakness and cramps in her legs and could interfere with her ability to drive. Dr. Barksdale stated that he did not anticipate Jackson to improve "at this time" due to multiple medical problems that had dramatically affected her quality of life.
RRPSB and its compensation insurer, Louisiana Workers' Compensation Corporation ("LWCC"), answered the claim and denied that Jackson had suffered an accident or any injury as a result of her employment at RRPSB. Discovery was taken and included a letter from Dr. Wyche Coleman, Jr., stating that Jackson had been hospitalized from May 23, 2002, until May 28, 2002, with pneumonia and that she had subsequently been diagnosed with intrastitial fibrosis. Dr. Coleman reported that Jackson stated that at the time of admission in 2002, she had been subjected to severe cold "at work." Dr. Coleman stated that "the extreme cold at work could have worsened her pneumonia symptoms during that period of time." RRPSB and LWCC ("respondents") subsequently filed an amended answer in which they also denied that Jackson had an occupational disease. They also urged an exception of prescription.
On April 18, 2006, the workers' compensation judge ("WCJ") held a hearing on the employer's exception of prescription. Jackson admitted that her conditions developed over the years and did not arise after an "accident." She testified that she did not know until 2005 that her pneumonia in 2002 might have been work related. The WCJ denied the employer's exception of prescription but ordered Jackson to file an amended form because the original complaint was too vague.
In May 2006, Jackson filed an amended claim for compensation and reported as the date, time and place of accident:
Occupational disease (Respiratory Infection C.O.P.D.) disability developed over a period of time longer than one week or shift; and stress and strains; degenerative lumbar disk disease L4-5 and L5-S1, exposures to fumes.
In describing the injury in detail, Jackson stated:
Pre-existing conditions of lung disease, heart disease, degenerative disk disease, treatment with medications and straining back and legs driving the school bus over a period of time has become totally and permanently disabled.
Jackson also added a claim against RRPSB for failing to provide a "state-funded benefit retirement plan" and alleged discrimination.
Trial was held in this matter on August 1, 2006. Jackson represented herself and explained that at the time she got sick in 2002, she was working for Ware Youth Center as a security officer from 6:00 p.m. until 6:00 a.m. and that she drove the school bus for RRPSB from 7:00 a.m. until 8:00 a.m. and then again from 2:30 p.m. *821 until 4:00 p.m. Subsequently, Jackson attributed her bronchitis to getting on and off the bus in the cold, the manual labor involved when driving the bus, and having to deal with the children on the bus. She also attributed the "stress" in her back and legs to her employment as a bus driver.
Jackson did not call any witnesses other than her sister, Bettye Law Richardson, who testified that Jackson's problems began in April 2002 with bronchitis, sinusitis and hypertension. Jackson submitted evidence from Dr. Barksdale listing Jackson's health problems. She also offered into evidence a set of her medical records and several hundred pages of medical bills. After Jackson rested her case, the respondents asked the court to dismiss Jackson's discrimination complaints for want of jurisdiction, and the WCJ agreed. Next, the respondents asked the court for an involuntary dismissal of Jackson's claim arguing that she failed to allege that she suffered an "accident" and had no evidence to prove that any of her health problems qualified as compensable occupational diseases.
The WCJ reviewed Jackson's medical records and noted that none of Jackson's doctors attributed her health problems, including any of her back or leg pain, to her employment as a bus driver. The WCJ found that Jackson's back problem was likely the result of a degenerative condition whose onset was "regardless of someone's job duties unless they have done heavy lifting and stressing their back for a prolonged period of time." Likewise, the WCJ noted that there was no proof that Jackson's bronchitis resulted from her employment and observed that thousands of people who suffer from that condition are "not even engaged in employment." Accordingly, the WCJ granted the respondents' motion for an involuntary dismissal, noting its sympathy with Jackson's genuine and serious health problems. Jackson now appeals.

LAW AND DISCUSSION
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Newsome v. Atmos Energy, 41,413 (La.App. 2d Cir.08/23/06), 938 So.2d 1098; Culotta v. A.L. & W. Moore Trucking Company, 35,344 (La.App. 2d Cir.03/05/03), 839 So.2d 1063, writ denied, XXXX-XXXX (La.05/30/03), 845 So.2d 1052. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the workers' compensation judge. Newsome, supra; Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App. 2d Cir.04/07/04), 870 So.2d 515.
An occupational disease or illness is "due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." La. R.S. 23:1031.1(B). Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of La. R.S. 23:1031.1(B). In Lee v. Schumpert, 36,733 (La.App. 2d Cir.01/29/03), 836 So.2d 1214, 1220-21, this court explained how a claimant must prove that she has an occupational disease:
The claimant asserting an occupational disease must prove, by a preponderance of evidence, a disability related to an employment-related disease, that it was contracted during the course of employment, and that it is the result of the work performed. The causal link between the claimant's occupational disease and the work-related duties must be established by reasonable probability.

*822 The claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused it. Expert testimony is required to support a finding of an occupational disease. (Citations omitted).
Medical reports may serve as the required expert testimony for proof of disputed medical matters. Fite v. Louisiana Title Co., 2002-2607 (La.06/27/03), 852 So.2d 983. Here, nothing on the forms attributes Jackson's medical conditions to her employment. More importantly, none of the medical records attributed any of Jackson's health problems to her employment with RRPSD.
Provided that the plaintiff has completed the presentation of her case, an involuntary dismissal may be granted in a workers' compensation case. See LAC 40:I:6211; Taylor v. Tommie's Gaming, 2004-2254 (La.05/24/05), 902 So.2d 380; Newsome, supra. La. C.C.P. art. 1672(B) provides, in part:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
The record clearly supports the WCJ's factual finding that Jackson proved neither that she suffered an on-the-job accident nor that she suffered from an occupational disease. Indeed, Jackson did not attempt to prove the occurrence of an accident but urged that her working conditions at RRPSB caused her to suffer lung problems which in turn caused her other health problems.
Assuming arguendo that Jackson's lung condition could be a disease compensable in workers' compensation, she presented no evidence that would satisfy her burden of proving that her condition resulted from her employment with RRPSD. At one point in her testimony, Jackson said that the cold exposure referred to in Dr. Coleman's letter occurred at her job with Ware Youth Center. In fact, she relied on that letter in her case against that employer. In Jackson v. Ware Youth Center, supra, in affirming the employer's motion for summary judgment, this court observed:
We note in particular that Dr. Coleman's August 2005 letter only points out that Jackson had pneumonia in May 2002, speculates that extreme cold at work could have worsened her pneumonia symptoms during that period of time, and lastly that Jackson subsequently had a diagnosis of intrastitial fibrosis. These statements establish neither a genuine issue of material fact with respect to a work-related accident, nor a genuine issue of material fact with respect to an occupational disease. Accordingly, we conclude both that Jackson failed to produce the necessary factual support to show that she would be able to satisfy her evidentiary burden of proof at trial and there is no genuine issue of material fact in this case.
In the absence of proof that Jackson's health conditions resulted from her employment with RRPSB, the WCJ correctly dismissed Jackson's claim for workers' compensation benefits.
Accordingly, the judgment of the WCJ is affirmed at Essie Jackson's cost.
AFFIRMED.
NOTES
[1] Jackson made a compensation claim against Ware Youth Center as well, but those claims were dismissed by the WCJ prior to the trial in the instant matter, and this court affirmed that ruling. Jackson v. Ware Youth Center, 41,830 (La.App. 2d Cir.01/24/07), 948 So.2d 374.