DREW, J.
11 Graphic Packaging appeals a judgment finding that Mary Murphy sustained carpal tunnel syndrome in both hands as a result of her employment.
We reverse.
FACTS
Mary Murphy worked for Graphic Packaging for over three decades, beginning in 1977. She retired from Graphic on November 20, 2011. She spent her last four years of employment for the company as a machine tender for three years, and then as a back tender for one year. Murphy began working as a back tender when a machine was shut down and another machine tender had more seniority.
As a machine tender, Murphy mainly worked on Graphic’s No. 5 paper machine, which had nine water filters. It was her job to clean the five-foot long filters with high-pressure hoses. Each filter was contained inside a tube. Murphy used a pry bar first to remove a cap from atop a tube, then to pull the filter up. She then removed the filter and cleaned it. She then put the filter back into the tube and screwed the cap back onto the tube.
Murphy stated that she began experiencing pain and swelling about two years before she retired. The symptoms started in her right hand and were later repeated in her left hand. Murphy said she also used the high-pressure hose to clean the machine’s pan, clean the floor, and perform other routine cleaning. She had to hold the hose with both hands while doing those tasks. When Murphy was asked which job duty caused her more pain and discomfort in her hands, she replied that it was cleaning the |2water filters with high-pressure hoses. She notified her supervisors that it was painful when she pulled the filters out of the tubes. She had not had problems with her right hand prior to that. After she complained, the company assigned employees to help her with pulling out the filters.
Murphy went to Dr. J.D. Patterson, her family doctor, for treatment of her symptoms. He gave her pain medications and told her to alternate heat and ice. She returned to him when the pain would not abate.
Dr. Douglas Brown, an orthopedic surgeon, examined Murphy on March 28, 2010, on a consultation from Dr. Patterson.[1] Murphy reported having right hand and wrist pain for over two weeks. Dr. *1042 Brown’s impression was carpal tunnel syndrome. Murphy was given a night splint for the hand, but was to continue working. Dr. Brown referred Murphy for an EMG nerve conduction study. The study, performed by Dr. James Potts on April 13, 2010, showed bilateral carpal tunnel syndrome of moderate severity and right cubi-tal tunnel syndrome of moderate severity.
Dr. Brown next examined Murphy on May 17, 2010. He noted the nerve conduction study results. After finding Murphy to be veiy symptomatic over the right carpal tunnel, he requested a right carpal tunnel release of the median and ulnar nerves of the wrist.
On September 17, 2010, Murphy filed a disputed claim for compensation in which she asserted that she sustained an injury on May 28, 2010, while cleaning water filters.
IsMurphy was treated by Dr. Richard Ballard, an orthopedic surgeon, on October 25, 2010. She gave a history to Dr. Ballard that she:
• had worked in manufacturing for many years handling product;
• had injured herself six months earlier pulling water filters;
• developed pain and numbness in both arms, with the symptoms getting progressively worse;
• had been treated by Dr. Brown; and
• had the nerve conduction study, the results of which she shared.
Dr. Ballard’s impression was bilateral carpal tunnel syndrome. He thought she would benefit from bilateral carpal tunnel releases.
TRIAL
As part of this litigation, Graphic videoed a machine tender performing certain responsibilities of his job, including the cleaning of one filter. The video was shown to Drs. Ballard and Brown at their depositions. Dr. Brown stated that based upon what he saw in the video, there was not enough repetitive motion with the hands during the course of a day to cause Murphy’s carpal tunnel syndrome. Dr. Ballard could not say that he agreed or disagreed with Dr. Brown’s opinion.
Over Graphic’s objections at the February 2012 trial, the WCJ admitted into evidence a June 2011 affidavit from Troy Smith, Murphy’s coworker, on the grounds that Smith was unavailable. Smith had helped Murphy with her job duties. Smith disagreed with the video depiction of the filter cleaning. He related that: (i) unlike the filter in the video, the filters were so dirty that it took a hammer and pry bar to remove the tops from the tubes; (ii) it took at least five minutes to clean each filter with a |4high-pressure water hose; (iii) Murphy had to use the high-pressure hose for other cleaning tasks; (iv) on a good day, Murphy would have to use the hose 8 to 10 times a day for an average of two hours; and (v) on a bad day, Murphy would use the hose 15-20 times a day for an average of four hours.
The WCJ found that the video showing the cleaning of a filter was not an actual and accurate depiction of Murphy’s job duties. The WCJ further reasoned that since Dr. Brown relied on the video when making his determination, she could not place significant weight on his opinion.
The WCJ quoted a lengthy excerpt from Dr. Ballard’s deposition in which he stated that what he saw on the video was “fairly hand-intensive” and it was possible those hand movements caused the carpal tunnel syndrome. The WCJ also noted that Murphy was one of the most credible witnesses to have testified in her courtroom, and that her testimony regarding her job duties was supported by Smith and even by Todd *1043 Johnson, who testified on behalf of Graphic.
The WCJ found that Murphy’s carpal tunnel syndrome in both hands was an occupational disease. Graphic was ordered to pay for all workers compensation benefits owed because of the carpal tunnel syndrome.
DISCUSSION

Affidavit

The WCJ ruled that Smith was unavailable based on the efforts to take his deposition. The affidavit was made available to defense counsel on June 30, 2011. A deposition was set up for September 7, 2011, but was cancelled by Graphic. The company then attempted to depose Smith on [¿February 1, 2012, but he did not appear because a subpoena was not issued. A subpoena was issued for a February 13, 2012, deposition, but Smith again did not appear because the subpoena showed only the date, but not the time.
We find that Smith did not meet the definition of unavailability under La. C.E. art. 804. Murphy did not show that she had been unable to procure his presence at trial. All that was shown at trial was that Graphic had been unable to depose him because of the defects in the two subpoenas.
We recognize that relaxed rules of evidence apply to workers’ compensation proceedings. See La. R.S. 23:1317. Nevertheless, the WCJ abused its discretion in admitting this hearsay evidence on the grounds of unavailability. Furthermore, the affidavit was executed after Dr. Brown’s deposition and was clearly an attempt to undermine the basis of his conclusion. In any event, the admission of the affidavit was of little import as Murphy’s medical evidence was lacking.

Occupational Disease

An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. La. R.S. 23:1031.1(B).
The claimant asserting an occupational disease must prove, by a preponderance of evidence, a disability related to an employment-related disease, that it was contracted during the course of employment, and that it is the result of the work performed. J.P. Morgan Chase v. Louis, 44,309 (La.App.2d Cir.5/13/09), 12 So.3d 440; Lee v. Schumpert, 36,733 (La.App.2d Cir.1/29/03), 836 So.2d 1214.
The causal link between the claimant’s illness and the work-related duties must be established by a reasonable probability. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161; Shields v. GNB Technologies, Inc., 33,911 (La.App.2d Cir.10/4/00), 768 So.2d 774.
The claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused it. Lee, supra. Expert testimony is required to support a finding of an occupational disease. Id.
In Fite v. Louisiana Title Co., 36,393 (La.App.2d Cir.10/24/03), 859 So.2d 259, writ denied, 2003-3230 (La.2/20/04), 866 So.2d 829, this court reversed a finding that Fite’s carpal tunnel syndrome and lateral epicondylitis were work-related. Fite, who was an abstractor, claimed that her job required her to pull large books and to write significant amounts. One of her treating physicians, Dr. Knight, opined that her injuries were work-related; the *1044 other treating physician concluded otherwise. The medical reports of Dr. Knight showed that he did not consider any detailed independent information regarding the particular responsibilities of Fite’s job that would have caused her symptoms. Rather, his conclusion was based on the job description provided by Fite. This court concluded, therefore, that Dr. Knight’s medical opinion lacked a sufficient and reasonable foundation to prove that Fite’s conditions were occupational diseases, especially in light of opinions to the contrary from another treating 17physician and the second medical opinion doctor. Accordingly, reliance on Dr. Knight’s medical opinion by the WCJ was unreasonable, which made the WCJ’s finding of an occupational disease manifestly erroneous.
The WCJ in this matter discounted Dr. Brown’s testimony because the WCJ did not find the video actually and accurately depicted Murphy’s job duties in that it failed to show the activities and extent of duties required to clean the filters.
The person shown in the video was a machine tender and he was cleaning the same filters that Murphy cleaned. The process of pulling the filter out of the tube, leaning the filter against a stand, and then using the hose to clean the filters that was shown in the video was the same process that she used. Murphy argued that the filters she cleaned were different in the sense that they were dirtier or had more wet paper or “stock” on them, and thus it would take more time to clean than shown in the video. Murphy estimated that it took a total of one hour to remove all nine filters, clean them, and then replace them.
Murphy also testified that the video did not show the machine tender using a pry bar to turn the cap to remove it and then using a pry bar to remove the filter, which she had to do when removing them. Murphy was not sure if she had any other disagreements with the video.
Murphy also said it sometimes took longer than five minutes to clean a filter. Although she testified at her deposition that she cleaned the filters once per shift, she argued at trial that she sometimes had to clean them more than once per shift on a frequent basis.
laTodd Johnson, a product engineer for Graphic, testified that:
• he was over the No. 5 paper machine for one year;
• he then worked as a shift supervisor for three years;
• his duties as a shift supervisor included the No. 5 paper machine;
• Murphy worked under him as a machine tender;
• machine tenders were required to clean the filters once per shift;
• the process involved loosening a cap, pulling the filter out, cleaning the filter, putting the filter back in, and tightening the cap;
• the video showed how a machine tender cleaned a filter;
• at times, a pry bar was needed to loosen the cap or the filter;
• it is not typical to take a full hour to clean all the filters;
• sometimes fiber would get inside the filter and plug it up;
• a plugged filter was not a common occurrence;
• the filter in the video did not look to be covered in stock, though it still appeared to have some debris on it;
• if one filter was covered in stock, then all nine filters would be;
• typically there is not much stock in the water, so usually there was little stock on the filters;
*1045 • a machine tender spends most of his shift in a control room where the machine is operated, only leaving the control room every two hours to record data and check gauges, or if the machine is having problems; and
• the videos did not accurately depict a full and true picture of the hand usages required of a machine tender.
Dr. Brown was told by counsel for Graphic that each of nine filters was cleaned during each shift. When he was asked if what was shown in the video could have caused the carpal tunnel syndrome, Dr. Brown replied that while it was the kind of activity that could cause carpal tunnel Rsyndrome if done continuously throughout the day, it would not cause the syndrome, if the duties were only performed once in a 12-hour shift.
The WCJ relied greatly on Dr. Ballard’s findings. He stated that his understanding was that whatever Murphy did, she did it repetitively over the course of the day. He further stated that Murphy had not told him how often she pulled and cleaned the filters. He added that carpal tunnel syndrome can have an etiology of repetitive motions, but the syndrome can also appear in persons having to pull very hard or lift something very heavy.
Dr. Ballard was shown the video of the machine tender cleaning the filter. He was told that nine filters were cleaned once per 12-hour shift. The WCJ quoted part of Dr. Ballard’s answer to a question of whether the filter cleaning shown in the video was the type of repetitive activity that could have caused her carpal tunnel syndrome:
That particular operation was fairly hand intense, you know, with the handling of the hose and the picking up and the putting down and the rotation. It was pretty hand intensive for that period of time. If he had 15 minutes to do that that would be a pretty strenuous workout for that period of time and only once in a shift I don’t know what else they would be doing there, but this is — I know I’m rambling, but I can’t say that oh, no, that’s not enough to cause carpal tunnel or oh, yes, it is. Now I will try to explain that a little bit.... The median nerve shares an enclosed space called a carpal tunnel with other structures such as tendons[.] And anything that makes that space smaller whether it be an injury, a traumatic event or anything that causes the tendons to swell or become irritated will put pressure on that nerve and that’s what carpal tunnel is, so if this fairly hand-intensive thing over that period of time irritates the tendons it is possible that that could do it.
The WCJ neglected to quote the conclusion to that answer when Dr. Ballard stated, with our emphasis added:
ImThere are people who do things much more strenuous than this that don’t have carpal tunnel, so again if you do something extremely intense for a very short period of time — five, 10 minutes, it can irritate that wrist and that wrist can set off carpal tunnel, so I know I’m dancing around, but I cannot say oh, yes, that did or no, that did not.
Dr. Ballard admitted that he could not agree or disagree with Dr. Brown’s opinion that cleaning the filters once per 12-hour shift would not have caused her carpal tunnel syndrome.
Dr. Ballard answered that he could not say one way or the other after watching the video.
In sum, Dr. Ballard gave neutral answers, and Dr. Brown opined that what he saw in the video would not cause carpal tunnel syndrome if done only once during a 12-hour shift.
*1046 There was no expert evidence supporting the finding of Murphy’s carpal tunnel syndrome being an occupational disease; therefore, that finding was clearly wrong.
DECREE
At Murphy’s cost, the judgment is REVERSED.

. Dr. Brown had performed shoulder surgery on Murphy in the 1990s for a work-related claim.