733 So.2d 1193 (1999)
George G. LaCOUR
v.
HILTI CORPORATION.
No. 98-C-2691.
Supreme Court of Louisiana.
May 18, 1999.
Steven Thomas Richard, Metairie, Counsel for Applicant.
William Chad Stelly, Scott William McQuaig, McQuaig & Stelly, Metairie, Counsel for Respondent.
*1194 MARCUS, Justice.[*]
In this workers' compensation proceeding, we are called upon to address whether plaintiff's claim for compensation has prescribed.
The following facts were adduced at the trial on the prescription issue. George G. LaCour was employed by Hilti, Inc. beginning in March of 1988 as a sales representative. His job required the sale, service and demonstration of power actuated and pneumatic power tools, like jackhammers and machines that drive bolts through steel. Beginning in 1989, Mr. LaCour began experiencing physical problems with his wrists and upper extremities. In 1989, he underwent a carpal tunnel release on his right wrist. In 1991, he began seeing Dr. James Gosey, Jr., an orthopedic surgeon. Mr. LaCour complained of pain in his left wrist and upper extremities. In April of 1992, Dr. Gosey performed a carpal tunnel release on Mr. LaCour's left wrist. During the recuperation period following the surgery, Mr. LaCour received short-term disability benefits through Hilti's disability insurer, Sun Life of Canada. He was released to return to work about six weeks later and he resumed his normal job duties. In 1992 through 1993, he experienced elbow tendinitis and Dr. Gosey performed a left elbow release in 1993. Mr. LaCour was told by Dr. Gosey at that time that if he went back to the same kind of work his problems would reoccur. In March of 1993, he filed a compensation claim with Crawford and Company, the compensation administrator for Hilti. Hilti was self-insured. The claim was denied. He received short-term disability benefits and then returned to his normal work duties. From 1993 through 1995, Mr. LaCour continued to perform his normal work duties, but he experienced progressive problems with his elbows and wrists and continued to see Dr. Gosey who noted the need for future surgery on the right lateral epicondyle (right elbow). In August of 1995, a right lateral epicondyle release as well as a medial epicondyle release on the right was performed by Dr. Gosey. Mr. LaCour's use of his right arm was limited for the next six weeks. He again received short-term disability benefits from Hilti. Mr. LaCour testified that during the fall of 1995, he continued to perform some work duties from his home. He spoke to his supervisor about his work status in the fall of 1995 at which time he expressed his desire to return to his normal employment duties. Mr. LaCour reached maximum improvement in November of 1995. At that time Dr. Gosey discussed with him the need to modify his job or not return to the same kind of work. Mr. LaCour testified that during December of 1995, he finally realized that he was unable to return to Hilti and assume the duties that he had been performing for them.
On November 14, 1995, Hilti wrote a letter to Mr. LaCour informing him that he had used up his short-term disability benefits and was being transferred to inactive status. The letter further stated that if he was physically unable to return to work by January 11, 1996, he would no longer be carried as an employee of record. Mr. LaCour did not return to work. The record contains a letter written by Dr. Gosey to Sun Life stating that Mr. LaCour "will never-ever-be able to return to his current job using power actuated tools" due to a medical condition and further stating that he is disabled from his current job. On January 31, 1996, Dr. Gosey wrote another letter to Sun Life stating once again that Mr. LaCour's previous employment caused his problems with his elbows and that he could not return to his employment because it would cause further destruction and deterioration to his elbows. Mr. LaCour filed this disputed claim for compensation on September 5, 1996, alleging that he suffered from an occupational disease with injury to his right and left elbows and carpal tunnel syndrome. Hilti answered, generally denying *1195 the allegations set forth in the claim and specifically pleaded that Mr. LaCour's claim had prescribed.
The workers' compensation judge found that Mr. LaCour's claim had prescribed. Accepting January 11, 1996, as the last date of employment and the date that disability began, the judge found that the claim was not filed until September of 1996, more than six months from the commencement of disability arising from an occupational disease. Mr. LaCour appealed. The court of appeal affirmed.[1] We granted certiorari to review the correctness of that decision.[2]
La. R.S. 23:1031.1 governs workers' compensation claims for occupational disease. La. R.S. 23:1031.1(E) provides:
E. All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.
In Bynum v. Capital City Press, Inc., 95-1395 (La.7/2/96), 676 So.2d 582 (1996), this court held that the existence of all three factors is necessary to trigger the running of the six month prescriptive period for claims of disability arising from an occupational disease.
The first issue we must address is whether the workers' compensation judge was correct in determining that Mr. LaCour became disabled as a result of an occupational disease on January 11, 1996. Hilti argues that Mr. LaCour suffered from problems associated with carpal tunnel syndrome and elbow degeneration as early as 1992 and that he was aware that the diseases were a direct result of demonstrating the use of power actuated and pneumatic tools associated with his work. Therefore, a claim for workers' compensation made in September of 1996 would be prescribed.
The compensation judge found that January 11, 1996 was the last date of employment and the date upon which Mr. LaCour's disability began for purposes of commencing the time period pursuant to La. R.S. 23:1031.1(E). January 11, 1996 was the date Hilti set forth in a letter to Mr. LaCour to either return to work or consider his employment with the company terminated. We agree with the trial judge that it was not until January 11, 1996 that all three factors set forth in Bynum were satisfied. There is no doubt that the diseases had manifested themselves and Mr. LaCour had reason to know he suffered from these diseases for many years. Mr. LaCour had been treated for carpal tunnel syndrome and elbow problems since 1989. From 1991 to 1995, he was seen and treated periodically for these problems by Dr. Gosey and had surgeries performed. Each time he had surgery Hilti would place him on shortterm disability but he always resumed his normal work duties. After the surgery in August of 1995, Mr. LaCour intended to resume his work duties as he had always done after his prior surgeries and he did continue to work out of his home. In November of 1995, when he had reached maximum recovery from his last surgery, he was told by Dr. Gosey that he could no longer perform the functions associated with his work. It was also during November that he was informed by Hilti that he would be terminated if he did not return to work by January 11, 1996. We conclude that the record supports the finding that January 11, 1996 was the date when Mr. LaCour's disability began *1196 because that was the date when he was forced to terminate his employment and all three factors set forth in Bynum were met. Hence, we find no manifest error on the part of the trial judge.
Next, we must determine if Mr. LaCour's compensation claim has prescribed. The workers' compensation judge found that Mr. LaCour did not file his formal disputed claim for compensation until September of 1996, more than six months from January of 1996, the date that Mr. LaCour became disabled as a result of an occupational disease. We find the compensation judge misinterpreted La. R.S. 23:1031.1(E). The statute requires that the employee file a claim with his employer within six months of the date that the disability commences or the claim is barred. The statute does not say that a formal disputed claim must be filed with the Office of Workers' Compensation within the six month period. In Duplechain v. Gulf States Utility Co., 468 So.2d 1386, 1389 (La.App. 3d Cir.1985), the third circuit concluded that the language of the statute suggests that its time limitation applies only to the "notification" of an employer of an occupational disease rather than the actual filing of a petition to recover compensation benefits. It reasoned:
From a liberal reading of this phrase, as we are mandated to do in interpreting the workmen's compensation laws, it appears that the statute does not contemplate a lawsuit against an employer but merely the notification of such employer. This interpretation is supported by another stipulation of the statute which states that the notification of the employer's compensation carrier will constitute compliance with the notification requirements of 23:1031.1.[3]
We agree that La. R.S. 23:1031.1(E) requires only that notice be given to the employer or to the compensation insurer within six months of a determination that the claimant is disabled as a result of an occupational disease. What constitutes notice will depend upon the facts and circumstances of the particular case. In Edwards v. Sawyer Industrial Plastics, 26,320 (La.App.2d Cir.12/07/94); 647 So.2d 449, the employee wrote a letter to his employer stating that while in the workplace, he sustained total disability from working. In Winzor v. Augenstein Construction Co., Inc., 378 So.2d 470 (La.App. 3d Cir.1979), writ denied, 379 So.2d 1103 (La.1980), the employee was visited by his job superintendent while he was hospitalized for tests. At that time, the employee told his superintendent that he had a lung disease and would not be able to return to work as a welder due to smoke and dust on the job. In Riley v. Avondale Shipyards, 305 So.2d 742 (La.App. 4th Cir. 1975), plaintiffs notification of the employer's insurance department of his retirement because of disability was sufficient to satisfy La. R.S. 23:1031.1(E). In the instant case, we find that the notice requirement was satisfied. Hilti was aware that Mr. LaCour was suffering from carpal tunnel syndrome and pain in both elbows for years and that such conditions were related to his work duties. In November of 1995, Hilti wrote a letter to Mr. LaCour indicating that his short-term disability benefits were about to expire and he would be terminated if he did not return to work on January 11, 1996. In letters dated December 28, 1996 and January 31, 1996 from Dr. Gosey to Sun Life, Hilti's disability insurer, Dr. Gosey stated that Mr. LaCour's previous employment, specifically *1197 the demonstration of vibrating machines, caused Mr. LaCour's problems to his elbows to begin with and he should not return to his employment because it would cause further destruction and deterioration to his elbows. These letters state that Mr. LaCour is disabled as a result of his employment. We find that these events served as timely notification to Hilti that Mr. LaCour was disabled as a result of an occupational disease so as to satisfy La. R.S. 23:1031.1(E).[4]
Having determined that the six month period set forth in La. R.S. 23:1031.1(E) addresses notification to the employer and not the filing of a formal disputed claim with the Office of Workers' Compensation, then the question remains what is the time period for filing a formal disputed claim with the Office of Workers' Compensation. The argument has been made that since the legislature did not provide for a prescriptive period in the statute, then no time limit exists for filing suit after the employer is notified that the claimant has suffered an occupational disease. See Edwards, 647 So.2d at 451; Juge, La. Workers' Compensation, Issue 5 at § 9:5. Often statutes creating a cause of action contain no prescriptive period. Instead, it is determined by reference to other statutes. Section A of the occupational disease statute does give us some guidance. It provides:
Every employee who is disabled because of the contraction of an occupational disease as herein defined ... shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.

(Emphasis added).
The statute provides at the outset that compensation for an occupational disease shall be treated "the same as if said employee received personal injury by accident." It also refers to the compensation provisions of Chapter 23. The prescriptive statute in Chapter 23 is set forth in La. R.S. 23:1209(A) which provides in pertinent part:
In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident, a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. (Emphasis added).
Laws on the same subject matter must be interpreted in reference to each other. La. Civ.Code art. 13. The Workers' Compensation Act is a "symmetrical whole." Landreneau v. Liberty Mutual Ins. Co., 309 So.2d 283 (La.1975). Therefore, it would seem only logical to conclude that the legislature intended that the prescriptive statute of Chapter 23 apply to a claim for an occupational disease. Moreover, application of La. R.S. 23:1209(A) to an occupational disease claim would prevent the filing of stale claims by the employee and give an employer an opportunity to satisfy its obligations under the Act. Hence, we conclude that the prescriptive period of La. R.S. 23:1209(A) applies to claims under La. R.S. 23:1031.1.
Applying La. R.S. 23:1209(A) to the facts of this case, we find that Mr. LaCour's formal disputed claim filed with the Office of Workers' Compensation on September 5, 1996 was timely filed. Hence, his claim has not prescribed. The court of appeal erred in affirming the judgment of the trial court sustaining Hilti's exception of prescription. We must reverse.

*1198 DECREE

For the reasons assigned, the judgment of the court of appeal in favor of Hilti, Inc. and against George G. LaCour granting the exception of prescription is reversed. The case is remanded to the trial court for further proceedings. All costs are assessed against Hilti, Inc.
NOTES
[*] Traylor, J., not on panel. Rule IV, Part 2, § 3.
[1] 98-0349 (La.App. 1st Cir. 9/25/98); 731 So.2d 547.
[2] 98-C-2691 (La.1/15/99); 735 So.2d 643.
[3] Accord, Edwards v. Sawyer Indus. Plastics, 26,320 (La.App.2d Cir.12/07/94); 647 So.2d 449; Winzor v. Augenstein Const. Co, Inc., 378 So.2d 470 (La.App. 3d Cir.1979); writ denied, 379 So.2d 1103 (La.1980); Marcantel v. Gulf Coast Food Stores, Inc., 300 So.2d 566 (La.App. 3d Cir.1974), writ denied, 304 So.2d 668. See also Denis Juge, Louisiana Workers' Compensation, Issue 5, § 9.5 (Lexis Law Publishing 1998) (unlike claims for accidents, the prescription for asserting a claim for an occupational disease is interrupted not by a suit being filed with the Office of Workers' Compensation but rather by filing a claim with the employer or the compensation insurer).
[4] Having found that timely notification occurred, we need not address Mr. LaCour's second assignment of error that the time period to file a claim should be extended an additional six months because the employer failed to provide notice of the time limitation in which to make a claim pursuant to La. R.S. 23:1031.1(I).