# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 23-731

IRVING CALDWELL

VERSUS

WEST FRASER (SOUTH), INC. AND
TRUMBALL INSURANCE COMPANY

**********

ON APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF NATCHITOCHES, NO. 22-00486
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

## JONATHAN W. PERRY
## JUDGE

**********

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Jonathan W. Perry, Judges.

MOTION TO DISMISS DENIED;
REVERSED IN PART, AND
AFFIRMED, IN PART,
AS AMENDED.

**John J. Rabalais**
**Blake M. Alphonso**
**Rabalais Unland**
**70779 South Ochsner Boulevard**
**Covington, Louisiana 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **West Frasier (South), Inc. and**
    **Trumbull Insurance Company**


**R. Bray Williams**
**Williams Family Law Firm, LLC**
**Post Office Box 15**
**Natchitoches, Louisiana 71458-0015**
**(318) 352-6695**
**COUNSEL FOR CLAIMANT/APPELLEE:**
    **Irving Caldwell**

**PERRY, Judge.**

This is a workers' compensation case based on an alleged occupational disease of carpal tunnel syndrome brought by Claimant, Irving Caldwell ("Mr. Caldwell"). West Fraser (South), Inc. ("West Fraser") and Trumbull Insurance Company (collectively referred to as "Defendants") suspensively appeal the decision of the workers' compensation judge ("WCJ") overruling their peremptory exception of prescription and awarding Mr. Caldwell medical expenses, indemnity benefits, penalties, and attorney fees.

Mr. Caldwell answered the appeal seeking modification of the workers' compensation judgment granting an offset to Defendants under La.R.S. 23:1212 for medical expenses, denying penalties and attorney fees for Defendants' denial of his claim for medical benefits, and seeking an additional award of costs and attorney fees incurred in connection with the appeal. Additionally, Mr. Caldwell moves to dismiss the suspensive appeal taken by Defendants on the grounds that the suspensive appeal bond was untimely posted.

FACTS AND PROCEDURAL HISTORY

Mr. Caldwell was hired by West Fraser on August 19, 1996. In 1998, Mr. Caldwell became a tilt hoist operator and worked in that position for approximately twenty-three years, with his last day of work being January 27, 2021. Before his employment ended, Mr. Caldwell had been diagnosed with carpal tunnel syndrome. Mr. Caldwell had a long history of carpal tunnel issues—between May 2013 and March 2021, he underwent five carpal tunnel release procedures.

Upon being diagnosed with carpal tunnel syndrome in 2012, Caldwell asserted a claim for workers' compensation benefits. Defendants accepted his claim as compensable and Mr. Caldwell received indemnity benefits and medical expenses relating to a carpal tunnel release procedure performed on his left wrist in May 2013.

Mr. Caldwell returned to his job as a tilt hoist operator, working in that capacity until his condition allegedly forced the end of his employment on January 27, 2021.

The matter before us concerns a Form 1008 Disputed Claim for Compensation filed by Mr. Caldwell on January 21, 2022. Therein, the accident and injury was described by Mr. Caldwell as: "Work related occupational disease claim for carpal tunnel syndrome that was either caused by or aggravated by the conditions of his employment with West Fraser." Thus, Mr. Caldwell sought wage and medical benefits.

In March 2022, Defendants filed a peremptory exception of prescription and answered Mr. Caldwell's claim. In their exception, Defendants argued Mr. Caldwell's claim for benefits was prescribed in accordance with La.R.S. 23:1209. In their answer, Defendants denied that Mr. Caldwell's bilateral carpal tunnel syndrome was caused by or aggravated by the conditions of his employment with West Fraser, disputed Mr. Caldwell's disability and, thus, his entitlement to workers' compensation benefits, and denied liability for penalties and attorney fees for its handling of Mr. Caldwell's claim.

Following a hearing in December 2022, the WCJ denied Defendants' exception of prescription. A judgment to this effect was signed on December 27, 2022.

Trial was held on April 25, 2023, at which Defendants' exception of prescription was re-urged. After taking the matter under advisement, the WCJ: (1) found Mr. Caldwell's bilateral carpal tunnel syndrome is an occupational disease causally related to his employment; (2) found Mr. Caldwell is disabled as a result of his bilateral carpal tunnel syndrome and unable to return to his previous employment; (3) found Mr. Caldwell is entitled to supplemental earnings benefits ("SEBs") from January 27, 2021, at a zero earning capacity; (4) found Mr. Caldwell

2

is entitled to workers' compensation medical benefits to treat his bilateral carpal tunnel syndrome; (5) determined Mr. Caldwell's average weekly wage to be $1,110.59; (6) determined Mr. Caldwell is entitled to SEBs in the amount of $81,809.84, subject to a credit owed to West Fraser in the amount of $5,048.10 for short term SEBs paid to Mr. Caldwell; (7) granted Defendants an offset under La.R.S. 23:1212 for the medical expenses paid by Mr. Caldwell's health insurer, Blue Cross Blue Shield; (8) awarded Mr. Caldwell penalties in the amount of $8,000.00[1] and an attorney fee in the amount of $20,000.00 for Defendants' denial of Mr. Caldwell's claim for SEBs; (9) denied Mr. Caldwell's claim for a statutory penalty for Defendants' failure to provide medical benefits; and (10) overruled Defendants' exception of prescription.[2] Judgment to this effect was signed September 1, 2023.

Defendants filed a suspensive appeal contesting the WCJ's judgment. Mr. Caldwell filed an answer to the appeal also seeking modification of the WCJ's judgment as well as a motion to dismiss/convert the suspensive appeal to a devolutive appeal on the grounds that Defendants' suspensive appeal bond was untimely posted.[3]

### ASSIGNMENTS OF ERROR

On appeal, West Fraser raises the following nine assignments of error:

1. The WCJ committed an error of law, warranting de novo review, by applying the incorrect legal standard and/or burden of proof necessary to determine whether the Plaintiff/Appellee's claim for

---

[1] The WCJ's judgment decreed, "[Mr.] Caldwell is entitled to a twelve percent statutory penalty on the back owed supplemental earnings benefits capped at $8,000.00 with legal interest running from date of judgment[.]"

[2] Mr. Caldwell was also awarded back owed out-of-pocket medical expenses in the amount of $810.97, with legal interest, and Defendants were cast with all costs of these proceedings.

[3] On January 3, 2024, Mr. Caldwell's motion to dismiss/convert the suspensive appeal to a devolutive appeal was referred to the panel to which the merits of the appeal were assigned.

indemnity benefits as a result of his alleged bilateral carpal tunnel syndrome has prescribed.

2. The WCJ committed manifest error, and/or his decision was clearly wrong, in finding that the Plaintiff/Appellee's claim for indemnity benefits as a result of his alleged bilateral carpal tunnel syndrome has not prescribed.

3. The WCJ committed an error of law, warranting de novo review, by applying the incorrect legal standard and/or burden of proof necessary to determine whether the Plaintiff/Appellee's claim for medical benefits as a result of his alleged bilateral carpal tunnel syndrome has prescribed.

4. The WCJ committed manifest error, and/or his decision was clearly wrong, in finding that the Plaintiff/Appellee's claim for medical benefits as a result of his alleged bilateral carpal tunnel syndrome has not prescribed.

5. The WCJ committed manifest error, and/or his decision was clearly wrong, in finding that the Plaintiff/Appellee has established a causal link between his work-related duties and his alleged bilateral carpal tunnel syndrome.

6. The WCJ committed an error of law, warranting de novo review, by applying the incorrect legal standard and/or burden of proof necessary to properly calculate the Plaintiff/Appellee's average weekly wage.

7. The WCJ committed manifest error, and/or his decision was clearly wrong, in finding that the Plaintiff/Appellee has an average weekly wage of $1,110.59.

8. The WCJ committed an error of law, warranting de novo review, by applying the incorrect legal standard and/or burden of proof necessary to determine whether the Plaintiff/Appellee is entitled to penalties and attorney fees.

9. The WCJ committed manifest error, and/or his decision was clearly wrong, in finding that the Plaintiff/Appellee is entitled to penalties in the amount of $8,000.00 for the denial of his claim for indemnity benefits, and/or attorney fees in the amount of $20,000.00.

In his answer to appeal, Mr. Caldwell also seeks to reverse the WCJ's granting an offset to Defendants under La.R.S. 23:1212 for past medical expenses paid by BCBS and the denial of Mr. Caldwell's claim for a statutory penalty and attorney

4

fees for Defendants' failure to provide medical benefits.  Lastly, Mr. Calwell seeks an additional award of attorney fees for work done on appeal.

In his motion to dismiss, Mr. Caldwell seeks dismissal of Defendants' suspensive appeal on the grounds that the suspensive appeal bond was untimely posted.  Because a motion for appeal was filed within the delays for a devolutive appeal, Mr. Caldwell submits Defendants' appeal should, instead, be maintained as a devolutive appeal.

**APPELLANTS' ARGUMENTS**

Defendants argue the WCJ incorrectly applied the prescriptive period for disability benefits, i.e., La.R.S. 23:1031.1, rather than the applicable prescriptive period for either indemnity benefits set forth in La.R.S. 23:1209(A)(2), or medical benefits set forth in La.R.S. 23:1209(C).  Defendants assert that since neither indemnity nor medical benefits have been paid to, or on behalf of, Mr. Caldwell since August 20, 2013, his present claim for benefits is prescribed.  According to Defendants, Mr. Caldwell's present claim for benefits should have been filed on or before August 20, 2016, at the absolute latest.

Regardless of whether Mr. Caldwell's claim for workers' compensation benefits have prescribed, Defendants argue no causal connection exists between Mr. Caldwell's alleged bilateral carpal tunnel syndrome, as well as any resultant disability, and his employment with West Fraser.  Defendants contend the WCJ was manifestly erroneous in finding Mr. Caldwell had established a causal link between his work-related duties and his alleged bilateral carpal tunnel syndrome.  Thus, they argue Mr. Caldwell's workers' compensation claims should have been denied.  For these same reasons, Defendants contend they have reasonably controverted Mr. Caldwell's claims for indemnity and medical benefits.  They argue the WCJ erred in

5

granting penalties and attorney fees for their denial of Mr. Caldwell's claim for indemnity benefits.

Defendants further contend the WCJ applied the wrong legal standard and/or was manifestly erroneous in finding that Mr. Caldwell has an average weekly wage ("AWW") of $1,110.59. They assert Mr. Caldwell actually has an AWW of $917.58.

Finally, Defendants assert the WCJ applied the wrong legal standard in finding Mr. Caldwell is entitled to statutory penalties under La.R.S. 23:1201 as well as an award of attorney fees. Defendants argue the WCJ erred in awarding penalties of $8,000.00 and an award of attorney fees in the amount of $20,000.00.

## APPELLEE'S POSITION

Mr. Caldwell alleges Defendants failed to timely post the suspensive appeal bond. Thus, he asserts Defendants' suspensive appeal should be converted to a devolutive appeal.

Mr. Caldwell asserts the WCJ properly overruled Defendants' exception of prescription, applying the prescriptive period enumerated in La.R.S. 23:1031.1(E). Mr. Caldwell asserts his workers' compensation claim was filed within one year from the date he last worked for West Fraser, as well as within one year of the date that he was permanently disabled from working as a result of his bilateral carpal tunnel syndrome.

Mr. Caldwell argues Defendants misinterpreted the law on prescription for occupational disease claims. He contends such a misinterpretation is not sufficient to justify a refusal to pay a demand for workers' compensation benefits. Thus, Mr. Caldwell asserts the WCJ did not err in granting penalties and attorney fees for Defendants' denial of his claim for indemnity benefits.

6

Mr. Caldwell argues Defendants failed to make any reasonable efforts to investigate his claim and, instead, misinterpreted the law on prescription for occupational disease claims to justify their failure to provide payment of his workers' compensation benefits. Mr. Caldwell contends the WCJ rightly determined Defendants' failure to provide indemnity benefits was unreasonable and, thus, was subject to penalties and attorney fees.

In his answer to appeal, Mr. Caldwell contends the WCJ did err in granting an offset to Defendants under La.R.S. 23:1212 for past medical expenses and in denying him an award of penalties and attorney fees for Defendants' failure to provide medical benefits. He also seeks an additional award of attorney fees for work done on appeal.

## MR. CALDWELL'S MOTION TO DISMISS

We begin with Mr. Caldwell's motion to convert Defendants' suspensive appeal to a devolutive appeal. In his motion, Mr. Caldwell asserts the suspensive appeal bond was due by October 30, 2023, however, Defendants' suspensive appeal bond was not posted until November 8, 2023. For the reasons discussed below, we deny the motion to dismiss as untimely.

By written judgment signed on September 1, 2023, the WCJ ruled Mr. Caldwell's bilateral carpal tunnel syndrome was an occupational disease causally related to his employment at West Fraser and awarded Mr. Caldwell certain other workers' compensation benefits associated with his action. The clerk's certificate in the record of this appeal shows that notice of this judgment was mailed to all parties through their respective counsel of record on September 1, 2023. No motion for a new trial was filed.

Defendants filed a Motion and Order for Suspensive Appeal on September 29, 2023. The order granting Defendants' motion was signed that same day and notice was issued setting the bond amount at $115,916.00.

On October 12, 2023, Defendants filed a Motion to Extend Deadline for Payment of Costs for Appeal. The order granting Defendants' extension was signed that same day declaring "that the current deadline for payment of all estimated costs of Defendants' pending appeal . . . including the SUSPENSIVE bond for appeal . . . be extended by an additional twenty (20) days, or until November 8, 2023."[4] On November 8, 2023, Defendants posted an appeal bond in the amount of $115,916.00.

On November 29, 2023, the appellate record was lodged in this court. On December 12, 2023, Mr. Caldwell filed the motion to dismiss which is presently at issue.

Mr. Caldwell relies on La.R.S. 23:1310.5(C), which reads:

> When there has been an award of benefits by the workers' compensation judge, no appeal by an employer shall be entertained by the appellate court unless the employer secures a bond with one or more sureties to be approved by the workers' compensation judge, guaranteeing that the employer will pay the amount of the award rendered therein together with interest thereon as otherwise provided by law, and all costs of the proceeding. The time limits for perfecting the bond shall be as provided in the Code of Civil Procedure, but shall not commence to run against the appellant until the appellant is notified by the workers' compensation judge as to the amount of the bond fixed in accordance with law.

He further refers to La.Code Civ.P. art. 2126 to argue "there is no statutory authority for an extension of time to file a suspensive appeal bond. Rather, the only extension of time that is allowed, and only allowed once, is for the payment of costs of an

---

[4] The record of this appeal contains a Memorandum in Opposition to Motion to Extend Deadline for Payment of Costs of Appeal and Filing of Suspensive Appeal Bond filed by Mr. Caldwell on November 7, 2023. Therein, Mr. Caldwell references and objects to a "second motion for extension of time to pay the estimated court costs of appeal and an extension of time to file a suspensive appeal bond" which Defendants purportedly filed on November 6, 2023. However, we find no such motion in the record before us.

appeal under [Article 2126, which] only allows for a one time extension of an additional twenty days."

Despite Mr. Caldwell's contentions, we note that a motion to dismiss is also subject to time limitations. Louisiana Code of Civil Procedure Article 2161 states, in pertinent part:

> Except as provided in Article 2162, a motion to dismiss an appeal because of any irregularity, error, or defect which is imputable to the appellant must be filed within three days, exclusive of holidays, of the return day or the date on which the record on appeal is lodged in the appellate court, whichever is later.

Though Defendants' suspensive appeal bond was filed after the thirty day period provided in La.R.S. 23:1310.5(C) for appealing suspensively, Mr. Caldwell did not seek dismissal of the suspensive appeal within three days of the filing of the appellate record in this court. Since Mr. Caldwell's motion was not filed "within the three day time period set forth in Article 2161, the suspensive appeal was no longer subject to dismissal." *Monk v. State Farm Mut. Auto. Ins. Co.*, 03-742, p. 3 (La.App. 3 Cir. 9/3/03), 853 So.2d 772, 775. Consequently, we deny the motion to dismiss Defendants' suspensive appeal.

## STANDARD OF REVIEW

Appellate courts review the factual determinations in workers' compensation cases using the manifest error or clearly wrong standard of appellate review. *Smith v. Packaging Corp. of America*, 22-171 (La.App. 3 Cir. 11/30/22), 354 So.3d 132, *writ denied*, 23-001 (La. 2/24/23), 356 So.3d 343. The manifest error or clearly wrong standard of review was explained by the supreme court in *Stobart v. State, through Dep't of Trans. & Dev.*, 617 So.2d 880, 882 (La.1993) (internal citations and quotation marks omitted), as:

> [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own

9

evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that the reviewing court must always keep in mind that if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

## LAW AND DISCUSSION

*Prescription*

We now turn to the issue of prescription. The WCJ found that Mr. Caldwell's claim was not prescribed under La.R.S. 23:1031.1 because it was filed within one year of the date that Mr. Caldwell was permanently disabled from working.

According to Defendants, because Mr. Caldwell's claim was initially accepted as compensable, and because Defendants have previously paid Mr. Caldwell both indemnity and medical benefits, the applicable prescriptive period within which to file for any additional/outstanding benefits is set forth in La.R.S. 23:1209. Thus, Defendants contend the WCJ applied the incorrect legal standard or burden of proof to determine that neither Mr. Caldwell's claim for indemnity nor medical benefits had prescribed. Defendants argue the WCJ erroneously applied the prescriptive period provided by La.R.S. 23:1031.1(E), rather than the prescriptive period provided by La.R.S. 23:1209(A)(2), to Mr. Caldwell's claim for indemnity benefits. Defendants further contend the WCJ erroneously applied the prescriptive period provided by La.R.S. 23:1031.1(E), rather than the prescriptive period provided by La.R.S. 23:1209(C), to Mr. Caldwell's claim for medical benefits.

10

Relating to the issue of whether Mr. Caldwell's claim for indemnity benefits was prescribed, in their appellate brief, Defendants argue that La.R.S. 23:1031.1(A) provides that compensation for an occupational disease shall be treated "the same as if said employee received personal injury by accident arising out of and in the course and scope of his employment." According to Defendants, La.R.S. 23:1031.1 "also specifically refers to the compensation provisions of Chapter 23 of the Louisiana Workers' Compensation Act, in which the applicable prescriptive period for indemnity benefits is set forth under [La.R.S. 23:1209(A).]" Defendants further cite and state that in *LaCour v. Hilti Corp.*, 98-2691 (La. 5/18/99), 733 So.2d 1193, the Louisiana Supreme Court "previously/explicitly concluded that the prescriptive period set forth under Section 23:1209(A) applies to occupational disease claims contemplated under Section 23:1031.1."

The claimant in *LaCour*, a jackhammer salesman, suffered from carpal tunnel syndrome and pain in both elbows over several years (1991–1995), had periodic surgeries, was placed on short-term disability after each surgery, and always resumed his normal employment duties. Following another surgery in November 1995, the claimant's doctor advised the claimant he could no longer perform his work. Also in November 1995, the employer wrote a letter informing the claimant that his short-term disability benefits were about to expire, and he would be terminated if he did not return to work by January 11, 1996. In letters dated December 28, 1995, and January 31, 1996, the claimant's doctor informed the employer's disability insurer that the claimant's job caused claimant's problems, and the claimant was disabled as a result of his employment.

The claimant did not return to work, and, on September 5, 1996, he filed a disputed claim for compensation claim. The employer pleaded prescription because

the claimant had suffered with carpal tunnel syndrome as early as 1992 and was aware it was the result of using pneumatic tools in his workplace.

The WCJ sustained the employer's exception of prescription. Though he accepted January 11, 1996, as the last day of employment and the date that disability began, the WCJ found the workers' compensation claim was prescribed because it was not filed until September 1996, more than six months from the commencement of the claimant's disability. The claimant appealed, and the court of appeal affirmed.

The supreme court, however, reversed the lower courts. The supreme court found no manifest error in the WCJ's finding that January 11, 1996, was the date that disability began "because that was the date when he was forced to terminate his employment and all three factors set forth in *Bynum*[5] were met." *LaCour*, 733 So.2d at 1196. The supreme court, however, disagreed with the WCJ's interpretation and application of La.R.S. 23:1031.1(E). When *LaCour*, 733 So.2d 1193, was decided, La.R.S. 23:1031.1(E) (emphasis added) provided:

> All claims for disability arising from an occupational disease are barred unless the employee files a claim **with his employer** within **six months** of the date that:
>
> > (a) The disease manifested itself.
> >
> > (b) The employee is disabled from working as a result of the disease.
> >
> > (c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
>
> **Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.**

---

[5] In *Bynum v. Capital City Press, Inc.*, 95-1395 (La. 7/2/96), 676 So.2d 582, the supreme court held the existence of all three factors in La.R.S. 23:1031.1 is necessary to trigger the running of prescription for claims of disability arising from an occupational disease.

The supreme court concluded "the six month period set forth in La.R.S. 23:1031.1(E) addresses notification to the employer and not the filing of a formal disputed claim with the Office of Workers' Compensation[.]" *LaCour*, 733 So.2d at 1197.[6] To answer, "what is the time period for filing a formal disputed claim for compensation with the Office of Workers' Compensation," the supreme court concluded the claimant's formal disputed claim was timely as a result of applying the one-year prescriptive period in La.R.S. 23:1209(A) for "all claims for payments." *Id.*

Relating to the issue of whether Mr. Caldwell's claim for medical benefits was prescribed, Defendants cite *Box v. City of Baton Rouge*, 02-198 (La.App. 1 Cir. 4/2/03), 844 So.2d 405, in support of their contention that the appropriate prescriptive period to apply to Mr. Caldwell's claim for medical benefits is contained in La.R.S. 23:1209(C). We find Defendants' reliance on both *LaCour*, 733 So.2d 1193, and *Box*, 844 So.2d 405, misplaced.

Despite the pronouncement in *LaCour* that the prescriptive period provided by La.R.S. 23:1209(A) applied to claims for disability arising from occupational diseases, *LaCour* was decided prior to the 2001 legislative amendment of La.R.S. 23:1031.1, which changed the language of the statute which guided the supreme court's reasoning in *LaCour*. *LaCour* stands for the proposition that the claimant's disability, and hence, prescription on his occupational disease claim begins on the date the employer terminates the claimant.

Unlike Mr. Caldwell, whose present workers' compensation claim was filed after his doctor opined that he was disabled as a result of his employment, the claimant in *Box*, 844 So.2d at 407, "was not yet disabled as of the time of the trial."

---

[6] The letters from the claimant's doctor to the employer's disability insurer "served as timely notification to [the employer] that [the claimant] was disabled as a result of an occupational disease so as to satisfy La.R.S. 23:1031.1(E)." *LaCour*, 733 So.2d at 1197.

13

There, the claimant "filed only a claim for medical benefits [under La.R.S. 23:1203], and not for disability benefits, the prescriptive period provided by La.R.S. 23:1031.1(E) for 'all claims for disability' is not applicable to his claim, and the OWC committed legal error by applying it." *Id*. In *Box*, our colleagues on the first circuit were clearly faced with facts which differed from the instant matter when they applied the prescriptive period contained in La.R.S. 23:1209(C).

In his oral ruling delivered on August 15, 2023, the WCJ offered the following reasoning for overruling Defendants' peremptory exception of prescription:

> I'll just take care of that issue first by relying on <u>Hawkins v. Pilgrim's Pride Corporation</u>, [10-402 (La.App. 3 Cir. 11/3/10), 49 So.3d 1069, *writ denied*, 10-2675 (La. 1/28/11), 56 So.3d 958] . . . .
>
> That was a case that was brought before this Court, and in that case I bought the argument that West Fraser's making in Mr. Caldwell's case. In other words, we had an individual that had carpal tunnel problems and they went out and had some surgeries. And they had some time off from work and then they came back to work, and this kept going on and on for a period of time. And I thought the first time period that the person was off of work culminated in the three things that were necessary in an occupational disease case to trigger the running of prescription, so I granted prescription. But I was reversed by the Third Circuit and the Court's relied on <u>LaCour v. Hilti Corporation</u>, [98-2691 (La. 5/18/99), 733 So.2d 1193], a supreme court decision[.]
>
> I've studied all of those cases once again in looking at this issue of prescription, and I believe certainly that in this case this claim is certainly not prescribed in light of the <u>Hawkins</u> decision. . . .

Defendants contend that Mr. Caldwell's claim is notably distinguishable from the jurisprudence cited in support of the WCJ's ruling that neither Mr. Caldwell's claim for indemnity nor medical benefits had prescribed. We disagree.

The claimant in *Hawkins*, 49 So.3d 1069, was employed at a chicken processing plant until her employment was terminated. Before her termination, the claimant was diagnosed with carpal tunnel syndrome and fibromyalgia. She underwent surgical procedures in December 2003 and January 2004 for her carpal

14

tunnel syndrome, after which she returned to modified employment duties.  After developing a worsening of her condition in early-2008, the claimant's treating rheumatologist instructed her to stop working from February 11, 2008 through May 8, 2008.  The rheumatologist informed the employer by letter that the claimant could return to work on May 8, 2008, but she was restricted from working in a cold environment.  The claimant received short-term disability benefits during her time off from work.

After three months, the employer did not allow the claimant to resume her duties without first supplying a release from her treating physician.  When no release was furnished, the employer notified the claimant she was terminated in a letter dated July 24, 2008.

The claimant filed a disputed claim for compensation on May 19, 2009.  The employer pleaded prescription alleging the claim was filed more than one year after the claimant became disabled from work and more than three years after the last payment of compensation to the claimant.

The WCJ sustained the employer's exception of prescription.  Reasoning that the claimant first manifested carpal tunnel syndrome in 2003 and concluding that the date the claimant was disabled from work as a result of the condition was February 11, 2008, when her treating rheumatologist excused her from work, the WCJ found the workers' compensation claim was prescribed because it was not filed until May 19, 2009, more than one year from the commencement of the claimant's disability.

The claimant appealed, arguing the WCJ erred in ruling that the date she was disabled as a result of an occupational disease was February 11, 2008.  Pointing to the supreme court's decision in *LaCour*, 733 So.2d 1193, the claimant argued that prescription on her claim did not commence until she was terminated, i.e., July 24, 2008.  This court agreed, declaring:

> Hawkins contends that *LaCour* stands for the proposition that, as a matter of law, prescription on occupational disease claims does not commence until the employee is terminated. We agree. The supreme court clearly stated that it was not until LaCour's condition forced his termination that his disability commenced. The present matter is almost directly on point, and we find *LaCour* binding.

*Hawkins*, 49 So.3d at 1072. As a result, this court concluded the claimant's disability was the date she was terminated by letter dated July 24, 2008; thus, the claimant's disputed claim filed on May 19, 2009, was timely under the prescriptive period in La.R.S. 23:1031.1(E).

The facts in this case parallel those of *Hawkins*. Initially diagnosed with carpal tunnel syndrome in 2012, Mr. Caldwell underwent a left wrist carpal tunnel release in May 2013, and he received medical and indemnity benefits through August 20, 2013, when he resumed his normal employment duties at Fraser.

In January 2017, Mr. Caldwell requested medical payments for continued treatment of his bilateral carpal tunnel syndrome. Defendants, however, informed Mr. Caldwell that his claim for workers' compensation benefits as a result of his bilateral carpal tunnel syndrome had prescribed effective August 31, 2016.

Mr. Caldwell's condition worsened in early-2019, which resulted in his undergoing four more carpal tunnel release procedures: right wrist on May 22, 2019; left wrist on June 19, 2019; and left and right wrists on March 3, 2021. Mr. Caldwell returned to his job as a tilt hoist operator in June 2019, working in that capacity until his condition allegedly forced the end of his employment on January 27, 2021.

Louisiana Revised Statutes 23:1031.1 governs the compensation for disability resulting from occupational diseases and specifies that work-related carpal tunnel syndrome is an occupational disease. Louisiana Revised Statutes 23:1031.1(E) sets for the prescriptive period applicable to occupational disease claims and provides:

All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of the date that:

(1) The disease manifested itself.

(2) The employee is disabled from working as a result of the disease.

(3) The employee knows or has reasonable grounds to believe that the disease is occupationally related.

On January 21, 2022, Mr. Caldwell filed a disputed claim for compensation, alleging disability arising from an occupational disease, specifically, carpal tunnel syndrome. The record reflects that on February 5, 2021, Mr. Caldwell was restricted from any type of manual labor occupation by his treating orthopedic surgeon, Dr. Carlton G. Houtz.

We find the WCJ did not err by applying the prescriptive period set forth in La.R.S. 23:1031.1(E) to Mr. Caldwell's disputed claim for compensation. Mr. Caldwell's claim filed on January 21, 2022, was timely filed within one year of the date he was disabled from working as a result of his bilateral carpal tunnel syndrome. In fact, Mr. Caldwell's claim is timely filed using either his last day of work, January 27, 2021, or the date he was restricted from working by his doctor, February 5, 2021. Defendants' peremptory exception of prescription was correctly overruled.

*Causation*

The next issue to address is whether the WCJ properly determined Mr. Caldwell met his burden of proving that he suffered bilateral carpal tunnel syndrome as a result of his employment with West Fraser. Defendants contend Mr. Caldwell's complaints of bilateral hand/wrist pain were more likely attributable to alleged diabetic or arthritic conditions.

Louisiana Revised Statutes 23:1031.1(B) provides, in pertinent part:

17

An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and particular to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome.

In *Rose v. Maison Deville Care Center*, 05-1307, p. 3 (La.App. 3 Cir. 4/5/06), 927 So.2d 625, 627, *writ denied*, 06-1054 (La. 9/1/06), 936 So.2d 205, this court observed:

A claimant asserting an occupational disease must prove by a preponderance of evidence that there is a disability which is related to an employment-related disease, that the disease was contracted during the course of employment, and that the disease is a result of the work performed. *Hymes v. Monroe Mack Sales*, 28,768 (La.App. 2 Cir. 10/30/96), 682 So.2d 871. The causal link between an employee's occupational disease and work-related duties must be established by a reasonable probability. *Id.*

The record contains medical opinions from two orthopedic surgeons on this issue—Dr. Carlton G. Houtz ("Dr. Houtz") and Dr. Robert Holladay ("Dr. Holladay"). Dr. Houtz, Mr. Caldwell's treating physician, testified that he began treating Mr. Caldwell on May 14, 2012, after receiving a referral from Dr. Wyche Coleman. Dr. Houtz initially diagnosed Mr. Caldwell with moderate carpal tunnel syndrome in his left wrist. In June 2013, Dr. Houtz diagnosed Mr. Caldwell with moderate carpal tunnel syndrome in his right wrist. His treatment continued as Mr. Caldwell's condition worsened to severe bilateral carpal tunnel syndrome, for which Dr. Houtz performed five carpal tunnel release procedures on Mr. Caldwell: left wrist on May 8, 2013; right wrist on May 22, 2019; left wrist on June 19, 2019; and both left and right wrists on March 3, 2021.[7]

On January 21, 2021—shortly before Mr. Caldwell's last day working—Dr. Houtz restricted Mr. Caldwell to light duty work, which entailed limited lifting and

---

[7] Mr. Caldwell also had an open left thumb trigger finger release performed by Dr. Houtz on this date.

carrying of lightweight objects. On February 5, 2021—shortly after Mr. Caldwell's last day working and less than one month before his surgery on both wrists—Dr. Houtz restricted Mr. Caldwell from any type of manual labor. In a letter to Mr. Caldwell's employer, Dr. Houtz wrote, "This gentleman has severe persistent bilateral carpal tunnel syndrome. His prognosis is poor to be able to return to any type of manual labor occupation and should be considered disabled at this point in my opinion."

Dr. Houtz testified that Mr. Caldwell's duties as a tilt hoist operator, including operating machinery and tools by hand, are repetitive motions that can cause carpal tunnel syndrome. It was Dr. Houtz's opinion that Mr. Caldwell's bilateral carpal tunnel syndrome was more medically probable than not related to his work duties and, further, more medically probable than not aggravated by his work conditions.

At the request of Defendants, Dr. Holladay, orthopedic surgeon, performed a medical examination of Mr. Caldwell on February 7, 2023. After examining Mr. Caldwell and reviewing his medical records, Dr. Holladay concluded that Mr. Caldwell does not have carpal tunnel syndrome. In his deposition, Dr. Holladay opined Mr. Caldwell's symptoms were related to the fact that he was a pre-diabetic and had osteoarthritis.

After considering the parties' evidence, the WCJ rejected the medical opinion of Defendants' orthopedic surgeon, explaining, in pertinent part:

> [T]he only thing presented on behalf of West Fraser is a postulated testimony of Dr. [Holladay] that somehow without any expertise in the area of diabetes or any diagnosis of diabetes, any past treatment for diabetes or arthritis, Dr. [Holladay] has suggested to this employer, which they have bought into, that this man's condition has nothing to do with his employment completely contrary to the years of opinion from Dr. Houtz that it is related, that they have paid for it in the past.
>
> And so, the Court finds that Mr. Caldwell has proven by a preponderance of the evidence that his bilateral carpal tunnel syndrome is cause related to his activities of employment with West Fraser.

Defendants' arguments chiefly relate to the weight of the medical testimony presented to the WCJ. On this issue, jurisprudence has long recognized that the opinion of a workers' compensation claimant's treating physician should be accorded greater weight than that of a physician who sees the patient only once or twice. *Hodges v. Golden Nugget Lake Charles, LLC*, 17-936 (La.App. 3 Cir. 3/17/18), 242 So.3d 654. *See also Henderson v. Graphic Packaging Int'l Inc.*, 48,491 (La.App. 2 Cir. 11/20/13), 128 So.3d 599. For this reason and based on our review of the record, we cannot say the WCJ was clearly wrong in finding that Mr. Caldwell proved by a preponderance of the evidence that his bilateral carpal tunnel syndrome was either caused by or aggravated by the conditions of his employment with West Fraser. Thus, we affirm the WCJ's determination on the issue of causation.

*Average Weekly Wage*

Next, Defendants complain of the WCJ's calculation of Mr. Caldwell's AWW to be $1,110.59. According to Defendants, Mr. Caldwell actually has an AWW of $917.58.

Mr. Caldwell testified his normal work schedule was five days per week and ten hours per shift, he was paid every two weeks, and when he stopped working for West Fraser on January 27, 2021, he was earning $18.00 per hour. Mr. Caldwell also earned various shift differentials for working a particular shift as well as occasional bonuses for reaching certain production goals. Because the plant was closed on certain holidays, Mr. Caldwell did not work and, instead, received holiday pay for Christmas Eve and Christmas Day in 2020 and New Years Day 2021.

Louisiana Revised Statutes 23:1021(13)(a)(i) (emphasis added) provides the method for calculation of AWW for a worker paid by the hour:

(13) "Wages" means average weekly wage at the time of accident. The average weekly wage shall be determined as follows:

**(a) Hourly wages.**

> (i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the *four full weeks preceding the date of the accident* or forty hours, whichever is greater. . . .

Under La.R.S. 23:1021(13)(g), the accident date for purposes of determining the employee's AWW is the date of the employee's last employment, which for Mr. Caldwell was January 27, 2021. The WCJ determined Mr. Caldwell's four full weeks prior to his accident were: January 18–24, 2021; January 11–17, 2021; January 4–10, 2021; and December 14–20, 2020.

Defendants contend the WCJ impermissibly included in his calculation of Mr. Caldwell's AWW rate the week of December 14–20, 2020, instead of either December 28, 2020–January 3, 2021, or December 21–27, 2020. The WCJ cited *Evans v. International Paper Co.*, 19-588 (La.App. 3 Cir. 2/5/20), 290 So.3d 229, for its exclusion of the aforementioned weeks, noting Mr. Caldwell did not work a full week but instead received holiday pay.

Defendants assert that La.R.S. 23:1021(13)(f) provides the correct method for calculating Mr. Caldwell's AWW. Louisiana Revised Statutes 23:1021(f) provides:

> **(f) Income tax.** In the determination of "wages" and the average weekly wage at the time of the accident, no amount shall be included for any benefit or form of compensation which is not taxable to an employee for federal income tax purposes; however, any amount withheld by the employer to fund any nontaxable or tax-deferred benefits provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee's wage and average weekly wage including but not limited to any amount withheld by the employer to fund any health insurance benefits provided by the employer and which was elected by the employee in lieu of taxable earnings shall be included in the calculation of the employee's wage and average weekly wage.

21

Defendants argue that because the eight hours of holiday pay received by Mr. Caldwell during the week of December 28, 2020–January 3, 2021 was, in fact, taxable, said pay should be included in his earnings for purposes of calculating his AWW. We disagree.

In *Evans*, 290 So.3d 229, this court considered the employer's assertion that the WCJ erroneously calculated the claimant's AWW. Noting that the claimant was paid, but did not work, for the Memorial Day holiday, this court declared:

> [W]e note that the week of May 30–June 3 included "holiday" pay for eight hours . . . and Mr. Evans did not clock in at all on June 1 either. That is not a "full week" for purposes of calculating AWW. *See Ivory v. Sw. Developmental Ctr.*, 07-1201 (La.App. 3 Cir. 3/5/08), 980 So.2s 108.
>     The intent of La.R.S. 23:1021(13)(a)(i), which governs the calculation of AWW for hourly workers, is to approximate the average number of hours an hourly employee works in a typical week, which is deflated when one includes a week that includes a holiday.

*Id*. at 237. As in this case, Mr. Caldwell did not work three holidays during the two week spans of December 28, 2020–January 3, 2021, and December 21–27, 2020.

Furthermore, Mr. Caldwell's last date of employment was January 27, 2021. On this date, Mr. Caldwell's pay rate was $18.00 per hour for regular time, and $27.00 per hour for overtime. Mr. Caldwell was also paid certain shift differentials depending on the shift he worked that day. Mr. Caldwell's pay statements reflect a regular time additional $0.25 per hour shift differential; for example, he received the regular time $0.25 per hour shift differential for all forty hours in the January 18–24, 2021, pay period; he earned an additional shift differential of $0.375 per hour for every hour overtime he worked across all pay periods; he received an additional payment labeled "WF Premium" for each hour (regular and overtime) worked at $0.25 per hour; and, he earned an additional $3.81 per week for "GLT Imputed Inc.". Lastly, in the two-week pay period that included the fourth week of December 14–

20, 2020, Mr. Caldwell received a production bonus in his average weekly wage calculation.

Thus, we find no error in the WCJ' s decision not to include these weeks in its average of Mr. Caldwell's hours actually worked in the four full weeks prior to his last day of work and, ultimately, in the calculation of Mr. Caldwell's AWW. This assignment of error lacks merit.

*Penalties and Attorney Fees*

Defendants' remaining assignments of error present the issue of whether penalties and attorney fees should have been awarded to Mr. Caldwell for Defendants' failure to pay indemnity benefits. Defendants' appellate brief also suggests the WCJ's award of attorney fees is excessive.[8]

In addressing Mr. Caldwell's demand for penalties and attorney fees, the WCJ stated, in relevant part:

> I do find the denial of the claim is unreasonable. The employer has to have some reasonable basis throughout the time they denied the claim for denying the claim, and they simply misinterpreted the law with respect to prescription in an occupational disease case having been informed of the proper jurisprudence long before the matter ever was filed with this Court.
>
> And so I award attorney fee[s] in that matter for failure to pay his SEB benefits, because he did submit over time his 1020s to the employer along with information from Dr. Houtz that he was incapable of performing his job of injury and therefore incapable of earning 90 percent of his pre-injury wages.

The judgment of the WCJ decreed Mr. Caldwell was "entitled to a twelve percent statutory penalty on the back owed supplemental earnings benefits" as well as attorney fees in the amount of $20,000.00. The judgment further decreed "[Mr.]

---

[8] Defendants stated the WCJ "awarded Mr. Caldwell attorney fees in the amount of $20,000.00 with no explanation as to his reasoning or calculation(s) for said award, except to note Mr. Caldwell had submitted a 'very well-written brief.'"

Caldwell's claim for a statutory penalty for the denial of his medical benefits is denied."

Defendants challenged Mr. Caldwell's entitlement to workers' compensation medical and indemnity benefits based on their belief that Mr. Caldwell's claims had prescribed and/or based on their contention that no causal link existed between Mr. Caldwell's work-related duties for West Fraser and his bilateral carpal tunnel syndrome. Thus, Defendants contend they acted reasonably in their denial of Mr. Caldwell's claims.

Mr. Caldwell argues Defendants misinterpreted the law on prescription for occupational disease claims. On February 20, 2017, West Fraser filed a LWC 1002 controverting Mr. Caldwell's claim for worker's compensation benefits stating Mr. Caldwell's "medicals had prescribed effective 08/31/2016." On the same date, Mr. Caldwell, through his counsel, filed a Notice of Disagreement informing West Fraser that it was wrong as a matter of law: "[Mr. Caldwell] is suffering from an occupational disease and it has not prescribed." Citations to *LaCour*, 733 So.2d 1193, and *Hawkins*, 49 So.3d 1069, were provided. Mr. Caldwell further argues Defendants have known since 2013 that Dr. Houtz opined that Mr. Caldwell's carpal tunnel syndrome was aggravated by his work. Despite this, Defendants did not have Mr. Caldwell examined by their choice of doctor until 2023.

The penalties for failure to make timely payments of compensation and/or medical expenses are set forth in La.R.S. 23:1201(F)(2), which provides, in pertinent part (emphasis added):

> [F]ailure to provide payment in accordance with this Section . . . *shall* result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day in which any and all compensation or medical benefits remain unpaid . . . together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate

24

for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . . Penalties *shall* be assessed in the following manner:

. . . .

(2) This Subsection *shall not apply if the claim is reasonably controverted* or if such nonpayment results from conditions over which the employer or insurer had no control.

The Louisiana Supreme Court has long held, "The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." *Authement v. Shappert Eng'g,* 02-1631, p. 11 (La. 2/25/03), 840 So.2d 1181, 1188. When determining whether penalties and attorney fees should be imposed on an employer, the crucial inquiry is "whether the employer had an articulable and objective reason to deny benefits at the time it took action." *Id*. "To reasonably controvert a claim, an employer must have sufficient factual and medical information to reasonably counter the factual and medical information provided by the employee." *McCarthy v. State, Off. of Risk Mgmt.*, 94-033, p. 5 (La.App. 3 Cir. 10/5/94), 643 So.2d 886, 889.

"The decision to assess penalties and attorney fees is a question of fact that is in the great discretion of the WCJ, and it should not be reversed on appeal absent manifest error." *Jeansonne v. Dep't of Pub. Safety & Corrs. Youth Servs., Off. of Juv. Just.*, 17-635, p. 9 (La.App. 3 Cir. 6/6/18), 247 So.3d 893, 900–01, *writ denied*, 18-1148 (La. 10/29/18), 254 So.3d 1209. The factors used in determining attorney fees in workers' compensation cases are "the degree of skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the amount of time devoted to the case." *Naquin v. Uniroyal, Inc.*, 405 So.2d 525, 528 (La.1981).

The record indicates Defendants knowingly chose to test their arguments relating to prescription and causation in the court below to challenge Mr. Caldwell's

entitlement to workers' compensation benefits. The WCJ rejected those arguments, and we have affirmed his rulings. "Reliance on an erroneous interpretation of a law subjects the employer to penalties and attorney fees." *Smith*, 354 So.3d at 144.

The record also reveals the extensive process of this litigation. Counsel for Mr. Caldwell participated in depositions, discovery, hearings on a motion to compel and an exception of prescription, and trial on the merits, for which he prepared numerous exhibits, obtained voluminous medical records, prepared pre- and post-trial statements, and obtained SEBs, medical benefits, and significant penalties for Mr. Caldwell.

After reviewing the record and considering the jurisprudence, we cannot find the WCJ manifestly erred in determining that penalties and attorney fees were warranted for Defendants' denial of Mr. Caldwell's claim for indemnity benefits. Furthermore, we find the attorney fees awarded are not unreasonable and do not indicate manifest error.

### *Mr. Caldwell's Answer to Appeal*

In answer to the appeal, Mr. Calwell contends the WCJ erred in granting an offset to Defendants under La.R.S. 23:1212 for medical expenses and denying his claim for statutory penalties and attorney fees for Defendants' denial of his workers' compensation medical benefits. Mr. Caldwell also requests additional attorney fees to defend this appeal.

### *Offset*

Mr. Caldwell argues the WCJ erred in giving credit for medical bills paid by Blue Cross Blue Shield, Mr. Caldwell's health insurance provider, as provided in La.R.S. 23:1212(A). Mr. Caldwell alleges Defendants submitted no evidence to prove they contributed to the payment of his health insurance premiums; rather, Mr. Caldwell alleges his evidence submitted at trial established that he paid 100% of his

health insurance premium and, once Defendants denied his claim, he was forced to pay all of his medical expenses.

> Louisiana Revised Statutes 23:1212(A) provides, in pertinent part:
>
> [P]ayment by any person or entity, other than a direct payment by the employee, a relative or a friend of the employee . . . of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. . . . If the employee or the employee's spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premium.

"[T]he employer or insurer seeking the offset ([under La.R.S.] 23:1212) . . . must prove the entitlement to and amount of any credit. Failure to introduce this evidence is fatal to the offset." *Taylor v. Columbian Chem.*, 32,411, p. 9 (La.App. 2 Cir. 10/27/99), 744 So.2d 704, 710. *See also Smith v. Roy O. Martin Lumber Co.*, 03-1441 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, *writ denied*, 04-1311 (La. 9/24/04), 882 So.2d 1144 (holding employer was not entitled to a credit under La.R.S. 23:1212 for benefits which were expensed under their Employee Benefit Trust because there was no evidence put forth as to what percentage was funded).

In this case, the WCJ correctly noted that Defendants pled entitlement to an offset under La.R.S. 23:1212; however, we find the record contains no evidence related to Defendants' payment of any insurance premiums on Mr. Caldwell's behalf, or even proof of payment of a portion of the premium. At trial, Mr. Caldwell's evidence established that he paid an itemized deduction from his wages in the amount of $179.99 per pay period in "pre-tax" deductions towards his health insurance plan. Thus, we find the WCJ erred in granting the credit.

27

*Penalties and Attorney Fees*

In light of our affirmation of the WCJ's $8,000.00 award of penalties for Defendants' failure to pay indemnity benefits, the issue of whether penalties and attorney fees should have been awarded to Mr. Caldwell for Defendants' failure to pay medical benefits is moot. Louisiana Revised Statutes 23:1201(F) allows for the imposition of multiple penalties; however, it limits the maximum amount of penalties that may be imposed for an employer's failure to pay compensation or medical benefits to $8,000.00.

*Additional Attorney Fees*

Finally, Mr. Caldwell has requested additional attorney fees for the work incurred as a result of this appeal. As stated by this court in *Smith*, 354 So.3d 132 at 144:

> "The award of additional attorney fees is warranted when the claimant successfully defends its judgment." *Thomas Med. Grp., APMC v. Stine, LLC,* 10-580 (La.App. 3 Cir. 12/8/10), 52 So.3d 993, 997. "Generally, when an award for attorney's fees is granted [by the WCJ], additional attorney's fees are proper for work done on appeal [so as] to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.

Thus, based upon counsel's successful defense of the WCJ's judgment, we award an additional attorney fee of $5,000.00.

## DECREE

For the foregoing reasons, we deny Mr. Caldwell's motion to dismiss the suspensive appeal, and we reverse that part of the judgment granting Defendants an offset under La.R.S. 23:1212. In all other respects, the judgment appealed from is affirmed, as amended, to award additional attorney fees in the amount of $5,000.00 for work done on appeal in favor of the claimant, Irving Caldwell, and against Defendants/Appellants, West Fraser (South), Inc. and Trumbull Insurance

Company.  All costs of this proceeding are assessed against Defendants/Appellants, West Fraser (South), Inc. and Trumbull Insurance Company.

**MOTION TO DISMISS DENIED; REVERSED IN PART, AND AFFIRMED, IN PART, AS AMENDED.**